**Trung D. Tu, OSB No. 004100**
Senior Deputy City Attorney
**PORTLAND CITY ATTORNEY'S OFFICE**
1221 SW Fourth Ave., Room 430
Portland, Oregon 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
Email: trung.tu@portlandoregon.gov

      Of Attorneys for Defendant City of Portland

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LIANI REYNA**,<br><br>      Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**, a municipal corporation,<br><br>      Defendant. | Case No. **3:21-cv-01839-AR**<br><br>**DEFENDANT CITY OF PORTLAND'S BRIEF IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER TO PROTECT SARA FOX FROM PLAINTIFF'S CONTINUED HARASSMENT AND BULLYING** |

On June 24, 2024, the Court held a preliminary telephonic discovery hearing (ECF 62-64 and 67) on the "informal" requests made: (1) by Plaintiff Liani Reyna ("Plaintiff" or "Reyna") for the Court to compel Defendant City of Portland ("Defendant" or "City") to provide a substantive response to her Interrogatory No. 3; and (2) by the City for the Court to impose a protective order to forbid Plaintiff from taking the deposition of Portland Police Officer Sara Fox ("Fox") from the City's Portland Police Bureau ("PPB") (Tu Dec. ¶ 3, Ex. 2, pgs. 3-4). Since that hearing, the parties resolved their dispute over Interrogatory No. 3 and the City served its substantive response on June 28, 2024 (Tu Dec. ¶¶ 4-5, Ex. 3). Unfortunately, the dispute as to the deposition of Officer Fox remains unresolved and Plaintiff's counsel has now threatened to seek sanctions against the City

**Page 1 – DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**

(Tu Dec. ¶ 6, Ex. 4, pgs. 1-2).  As such, pursuant to Federal Rule of Civil Procedure 26(c)(1), the City now hereby "formally" moves the Court for a protective order to forbid Plaintiff from taking the deposition of Officer Fox, or alternatively, to impose the reasonable parameters proposed by the City in § II.C below for the protection of Officer Fox and to prevent Plaintiff from continuing her <u>documented history</u> of harassing and bullying Officer Fox ("Motion").

The City's Motion is based upon and supported by the following: (1) this brief; (2) the supporting Declaration of Trung D. Tu and exhibits thereto ("Tu Dec."), which are filed herewith and incorporated herein; (3) the supporting Supplemental Declaration of Trung D. Tu and exhibit thereto ("Tu Supp. Dec."), which are filed herewith under seal and incorporated herein; (4) the Court's entire record for this case (cited to as "ECF" followed by corresponding docket number); and (5) such matters that the Court may take judicial notice of.

## I.    INTRODUCTION

Plaintiff is a former PPB sergeant, who was employed by the City from 1993, until her retirement from PPB on June 26, 2019 (ECF 28, ¶ 3 and second ¶ 8).  Plaintiff and Officer Fox were previously in a domestic partnership from 2000 to 2012, and together they have and share custody of a daughter (ECF 28, ¶ 13; Tu Dec. ¶ 15, Ex. 12, pg. 1).  In April 2015, Plaintiff learned that Officer Fox was in an intimate/romantic relationship with PPB Officer Gregory Moore (Tu Dec. ¶ 16, Ex. 13, pg. 1; ECF 1, ¶ 3).  Plaintiff did not approve of Officer Fox's relationship with Officer Moore because he was separated, but still married to his wife at the time (ECF 1, ¶ 24; Tu Dec. ¶ 16, Ex. 13; Tu Supp. Dec. ¶ 2, Ex. 1, pgs. 3, 5 , 8, 13-14, 19, 21, 26 and 28).  This lawsuit stems from and is mainly motivated by Plaintiff's disapproval and hatred of that relationship.

Through the First Claim and Second Claim asserted in the Second Amended Complaint (ECF 28) ("SAC"), Plaintiff asserts that: (a) she is a "whistleblower" because of all the complaints she made with PPB's Internal Affairs ("IA") and City Auditor's Independent Police Review Division ("IPR") about Fox, Moore and PPB employees who refused to investigate her (false)

**Page 2 –**    **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**

complaints about Fox and Moore; and (b) as a result of the IA and IPR complaints she made, the City subjected her to employment discrimination, harassment and retaliation by, among other things, treating and handling her complaints differently from the way the complaints made against her were treated and handled (ECF 28, ¶¶ 90-115). Despite the SAC's convoluted and confusing allegations, it is clear that Plaintiff brought those claims because the City refused to allow her to weaponize its police accountability system to exact retribution on Officer Fox and Officer Moore.

## II.    DISCUSSION

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" For the reasons discussed herein, the Court should grant this Motion to protect Officer Fox from Plaintiff.

## A.    <u>The Court Should Protect Fox from Plaintiff's Continued Bullying and Harassment</u>

## 1.    Plaintiff's History of Bullying Behavior Relating to Her Prior Relationships

Plaintiff has a documented history of harassing, threatening and bullying others when it comes to her prior romantic/personal relationships. On February 8, 2002, Plaintiff was provided with a letter of warning from then Chief of Police Mark Kroeker and counseled because of her threatening behavior toward PPB Officer Jeanette Brown, who was previously in a personal relationship with Plaintiff, and PPB Officer Tonja Reigle, who was then in a personal relationship with Officer Brown. Because of her behavior, Chief Kroeker specifically warned Plaintiff that "[b]ehavior that is perceived as a threat or is otherwise aggressive toward a co-worker is prohibited and will result in discipline or discharge[,]" and that he "will not tolerate employees of [PPB] wishing physical harm on a fellow officer" (Tu Dec. ¶ 7, Ex. 5, pg. 3).

On June 2, 2003, Plaintiff was counseled by then Commander Bret Smith because of three instances of her bullying and harassing conduct in 2002, towards JoAnne Steffey, who was a detective with the Port of Portland Police "and was, at one time, in a personal relationship with a

Page 3 –    **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**

PPB officer [Plaintiff was] currently dating" at the time (Tu Dec. ¶ 7, Ex. 5, pg. 4).  "The first incident involved clothing that was dumped on the driveway at Ms. Steffey's residence" (Tu Dec. ¶ 7, Ex. 5, pg. 4).  The second incident "was [Plaintiff] waiting outside of Ms. Steffey's home and engag[ing] in a verbal altercation in which [Plaintiff] told Ms. Steffey [she] was lucky [Plaintiff] didn't come to her house a week earlier because [Plaintiff] would have <u>killed</u> her" (Tu Dec. ¶ 7, Ex. 5, pg. 4; emphasis added).  The third incident was a letter Plaintiff sent to Ms. Steffey "express[ing] anger with Ms. Steffey" (Tu Dec. ¶ 7, Ex. 5, pg. 4).

Then on January 25, 2005, Plaintiff was disciplined with a 30-hour suspension without pay because in 2003, she "used [her] authority as a law enforcement officer for personal reasons" after a brief interaction between herself and Ms. Steffey, when "Ms. Steffey's car happened to pull up next" to Plaintiff, who was <u>on duty</u> and stopped at an intersection in a marked police car (Tu Dec. ¶ 7, Ex. 5, pgs. 4-5).  Plaintiff ran "Ms. Steffey's license plate in LEDS" even though "[she] had no official police business reason to do so" and subsequently lied about it by stating that "[she] felt it was necessary to protect [her]self from Ms. Steffey due to [her] belief that Ms. Steffey nearly ran [her] over in her personal car" (Tu Dec. ¶ 7, Ex. 5, pg. 5).[1]  Plaintiff also filled out and submitted "a FCR regarding Ms. Steffey" even though "[she] had no official police business to do so" (Tu Dec. ¶ 7, Ex. 5, pg. 5).[2]  Plaintiff falsely reported on the FCR that Ms. Steffey, who at the time was a detective with the Port of Portland Police Department, "was engaged in suspicious activity because she was 'hanging out' in a 'high vice' area, which suggest[ed]" that Ms. Steffey was involved in "drug dealing and/or prostitution" (Tu Dec. ¶ 7, Ex. 5, pg. 5).[3]

---

[1]    LEDS "is a tool that police officers use to identify individuals through their vehicles" (Tu Dec. ¶ 7, Ex. 5, pg. 5).

[2]    A FCR is a report "used to record the information on persons contacted as a result of their suspicious activity or proximity to the scene of a crime[, and] . . . to pass on information on known criminal subjects, their associates and vehicles" (Tu Dec. ¶ 7, Ex. 5, pg. 2).

[3]    There are more disturbing facts about Plaintiff's behavior towards Ms. Steffey that are described in the Memorandum notifying her of the imposed discipline. There are too many details to summarize within this brief.  However, the City asks that the Court review and consider all of the facts described in the Memorandum attached to the Declaration of Trung D. Tu as Exhibit 5.

**Page 4 –    DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**

2.    **Documented History of Plaintiff Bullying and Harassing Sara Fox**

More importantly, there is extensive documented history of Plaintiff continuously bullying and harassing Officer Fox since at least 2015, when Plaintiff learned that Officer Fox was dating Officer Moore.  On July 23, 2017, Plaintiff was notified by PPB that following an investigation in IA Case No. 2016-C-0050, then Chief of Police Michael Marshman sustained the allegation that "Sergeant Liani Reyna bullied Officer Sara Fox when she repeatedly threatened her reputation in person and in text" messages (Tu Dec. ¶ 8, Ex. 6).  After two due process meetings, then Deputy Chief Robert Day provided Plaintiff with a Memorandum on September 16, 2018, informing her that she would be disciplined with a 10-hour suspension without pay (Tu Dec. ¶ 9, Ex. 7).  In that Memorandum, Deputy Chief Day noted, among other things, that Plaintiff had: (a) bullied Officer Fox by making "a concerted and ongoing effort to make Officer Fox believe that her relationship with Officer Moore was improper" and her "actions conveyed to Officer Fox that [she] knew a lot about her and Officer Moore's on and off duty behaviors and that [she was] willing to discuss them with her sergeant and peers[;]" and (b) intimidated Officer Fox by sending her "a series of text messages letting Officer Fox know that [she was] watching her activity at work and [she] raised the possibility of contacting Officer Fox's sergeant" (Tu Dec. ¶ 9, Ex. 7, pg. 3).[4]  Plaintiff's discipline was subsequently reduced to a letter of reprimand on or about April 7, 2020, pursuant to a grievance settlement between Plaintiff's union and the City (Tu Dec. ¶ 10, Ex. 8, pg. 1).

On September 25, 2018, the Honorable Kirsten E. Thompson issued her ruling in which she awarded Officer Fox with a $15,000 attorneys' fee award against Plaintiff in their Washington County child custody and support case (Tu Dec. ¶ 11, Ex. 9, pg. 1).  In making that attorneys' fee

---

[4]    Internal Affairs' investigative report for IA Case No. 2016-B-0050 contains much more disturbing details and information about Plaintiff's bullying behavior towards Officer Fox, including copies of and excerpts from the text messages and emails that Plaintiff sent to Officer Fox.  The report contains too much information to summarize within this brief.  However, the City asks that the Court review and consider all of the facts described in the Confidential Investigative Report attached to the Supplemental Declaration of Trung D. Tu as Exhibit 1, which is filed herewith under seal pursuant to the Court's Stipulated Protective Order.

**Page 5 –    DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**

award, Judge Thompson found that the modification request made by Officer Fox "was extremely modest" but became "disproportionately expensive for" her as a result of Plaintiff's conduct in the case (Tu Dec. ¶ 11, Ex. 9, pg. 3).  Judge Thompson also found that Plaintiff's conduct in the case "appear[ed] to be motivated in some measure by animus and an increase in costs for" Officer Fox (Tu Dec. ¶ 11, Ex. 9, pg. 3).

In her effort to continue her harassment and bullying of Officer Fox, between 2017 and 2023, Plaintiff made or initiated meritless IA/IPR complaints against Officer Fox <u>at least nine times</u> (Tu Dec. ¶¶ 12-13, Ex. 10, pg. 2), which do not even include the numerous times that she asked IA and IPR to reopen investigations of past complaints that she had made against Officer Fox.  In those various complaints, Plaintiff falsely accused Officer Fox of, among other things, threatening to abuse their daughter, allowing the sexual abuse of their daughter by Officer Moore, failing to (falsely) report Officer Moore's purported sexual abuse of their daughter, acting unprofessionally in personal communications with Plaintiff, refusing to drop off their daughter with Plaintiff, being dishonest and untruthful, inappropriately using PPB resources to obtain personal information about Plaintiff, committing perjury in court documents, threatening to retaliate against Plaintiff, harassing Plaintiff and neglecting to care for their daughter (Tu Dec. ¶¶ 12-13, Ex. 10, pg. 2).  Because of her numerous meritless IA/IPR complaints, on September 4, 2020, Ross Caldwell, the Director of IPR, sent a letter to Plaintiff stating that:

> Over the course of the past few years, you have filed numerous complaints with IPR. In general, these complaints have alleged prior misconduct by Officers Fox and Moore stemming from your personal relationship with Officer Fox, and/or alleged misconduct related to the Police Bureau's handling of your complaints. IPR, Internal Affairs and multiple outside agencies have investigated your concerns and found no misconduct in an extremely large volume of complaints including several that were opened while you were still employed by PPB[,] including 20177-B-0023, 2018-B-0033, 2019-B-0022, 2019-B-0039, as well as several others filed after you retired from service[,] including 2019-C-0215, 2019-C-0263, 2019-C-0300, 2019-C-0310, 2019-C-0312, 2019-C-0346 and 2019-C-0386.
>
> This has taken an inordinate amount of IPR resources and these complaints seem to have more to do with your personal life, and personal relationships

**Page 6 –    Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice**

> with PPB members, than with any PPB members' professional performance. This is not what IPR is intended to do. The purpose of IPR is to safeguard the rights of community members and promote higher standards of competency, efficiency and justice in the provision of community policing services. . . .
>
> Moving forward, IPR will not investigate complaints from you that are related to past conduct by Officers Fox and Moore, that are related to the investigation or disposition of your prior complaints, or that have another remedy (such as a court proceeding). If you file such complaints, IPR will document the contact and the nature of your concerns, but will take no further action. IPR may investigate other new complaints that present a legitimate issue.

(Tu Dec. ¶ 13, Ex. 10, pg. 2). Mr. Caldwell repeated that same sentiment and information in his January 13, 2021 email to Plaintiff (Tu Dec. ¶ 14, Ex. 11). Despite his repeated admonitions, since Mr. Caldwell's January 13, 2021 email, Plaintiff has made two additional baseless IA/IPR complaints against Officer Fox in 2023 (Tu Dec. ¶ 12).

Then in 2019, Plaintiff contacted the Washington County District Attorney's Office and requested that they criminally investigate and prosecute Officer Fox for the crimes of perjury/false swearing, menacing and stalking; as well as for violating the Washington County Circuit Court's domestic relations order, sending emails to Plaintiff "during the night" to harass her, threatening to leave their daughter alone without supervision and threatening retaliation (Tu Dec. ¶ 15, Ex. 12, pgs. 1-2). Following the criminal investigation into Plaintiff's allegations, the Washington County District Attorney's Office decided that it "is not going to file any criminal charges against Sara Fox" (Tu Dec. ¶ 15, Ex. 12, pg. 2). The DA's Charging Decision attached to the Declaration of Trung D. Tu as Exhibit 12 contains the District Attorney's Office's detailed explanations for not pursuing criminal charges against Office Fox as a result of Plaintiff's baseless allegations. The Charging Decision is too detailed to summarize here, but the City asks that the Court review and consider all of the information contained in the DA's Charging Decision.

**B.    Fox's Deposition is Unnecessary and Disproportionate to the Needs of the Case**

It is not necessary for Plaintiff to take Officer Fox's deposition in order to prosecute any of her claims against the City because she does not have any relevant testimony or information to

Page 7 –    DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE

provide.  As such, allowing Plaintiff to take her deposition is disproportionate to the needs of the case.  The SAC's only claims that contain allegations about Officer Fox are the First and Second Claims.  The crux of those two claims is that the City retaliated against Plaintiff by treating and handling her IA/IPR complaints differently from the way it handled IA/IPR complaints that other PPB employees had made against her (ECF 28, ¶¶ 92-93 and 113-14).  Officer Fox's testimony is not needed to prove any aspect of those claims because it is the City's conduct that is at issue, not Officer Fox's conduct.    Moreover, Plaintiff has already scheduled and will be taking the depositions of Chief of Police Bob Day, Commander Jeffrey Bell and Captain Tim Robinson, all of whom would have better and more direct knowledge about whether the City treated and handled Plaintiff's IA/IPR complaints differently than it handled complaints made by other PPB employees. Plaintiff will also be taking and has already scheduled the deposition of Officer Moore.

But more importantly, the SAC does not contain any actionable allegations about Officer Fox because most of its allegations pertaining to her are about events or conduct that occurred <u>after</u> Plaintiff retired from PPB on June 26, 2019, and was no longer employed by the City (ECF 28, ¶ 3 and second ¶ 8).  As Judge Immergut stated in her Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, the Court: (a) "focuse[d] its analysis on [the SAC's] allegations of discrimination and retaliation [that occurred] <u>during Plaintiff's employment</u> with Defendant because" ORS 659A.203, 659A.199 and 659A.030 "specifically proscribes retaliation and discrimination against <u>an employee by an employer</u>" (ECF 41, pg. 20 fn. 9; emphasis added); (b) ruled that "Plaintiff unquestionably can state a claim for discrimination and retaliation [that happened] <u>during her employment</u>" since "[t]he statutes underlying Claims One and Two both proscribe unlawful employment practices <u>against employees</u>" (ECF 41, pg. 21; emphasis added and internal quotations omitted); (c) construed the City's lack of standing argument as the City's intention "to argue that Plaintiff cannot state a claim for conduct [that arose] <u>after she retired</u> because both" ORS 659A.199(1) and 659A.203(1)(b)(A) "require unlawful

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TEL: (503) 823-4047; FAX: (503) 823-3089

employment practices taken <u>against employees</u>" (ECF 41, pg. 21 fn. 11; emphasis added); and (d) ruled that the SAC "includes [allegations of] adverse employment decisions [made] <u>during Plaintiff's employment with PPB</u>, which is enough to state a claim under Claims One and Two" (ECF 41, pg. 22; emphasis added).  The SAC's <u>only</u> allegations that mention Officer Fox and are about facts that occurred before Plaintiff retired from PPB on June 26, 2019, are found in paragraphs 13, 35-36 and 41-43.  Nothing alleged in those paragraphs would require or necessitate Plaintiff taking Officer Fox's deposition.

**C.     Parameters Should be Imposed to Protect Fox if Plaintiff is Allowed to Depose Her**

        In an attempt to resolve this dispute with Plaintiff, on June 27, 2024, the City's undersigned counsel reached out to her attorney and offered to have Officer Fox voluntarily appear for her deposition in exchange for Plaintiff's agreement to the following parameters: (1) Plaintiff will not attend or be present for Officer Fox's in-person deposition, and she will also not watch the deposition remotely via Zoom or other video technology; (2) Plaintiff's attorney will not ask Officer Fox about anything that occurred after Plaintiff retired from PPB on June 26, 2019, unless it relates to an IA/IPR complaint that Plaintiff made before she retired; (3) Plaintiff's attorney will not ask Officer Fox any questions pertaining to her prior relationship with Officer Moore; and (4) Plaintiff's attorney will not ask any questions relating to Plaintiff's and Officer Fox's daughter, which includes not asking about the sexual abuses that Plaintiff claims happened to their daughter (Tu Dec. ¶ 6, Ex. 4, pg. 3).  However, Plaintiff and her attorney would not agree to any of those proposed parameters (Tu Dec. ¶ 6, Ex. 4, pg. 1).

        All of the City's proposed parameters are reasonable, especially given Plaintiff's extensive history of bullying and harassing Officer Fox.  Moreover, all of the proposed parameters are allowed by Federal Rule of Civil Procedure 26(c)(1)(A) through (H).  As such, if the Court rules that the City must make Officer Fox appear for her deposition, then at the very least, the Court should impose those proposed parameters to protect Officer Fox from Plaintiff's bullying.

**Page 9 –     DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**

### III.    CONCLUSION

For the reasons stated above, the Court should grant the City's Motion and enter a protective order prohibiting Plaintiff from taking Officer Fox's deposition.

DATED:  July 1, 2024                    PORTLAND CITY ATTORNEY'S OFFICE


                                        By: */s/ Trung D. Tu*
                                            Trung D. Tu, OSB No. 004100
                                            Senior Deputy City Attorney
                                            Email: trung.tu@portlandoregon.gov
                                            Telephone: (503) 823-3057
                                        Of Attorneys for Defendant City of Portland

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
TEL: (503) 823-4047; FAX: (503) 823-3089

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I served or caused to be served a true and correct copy of the foregoing **DEFENDANT CITY OF PORTLAND'S BRIEF IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER TO PROTECT SARA FOX FROM PLAINTIFF'S CONTINUED HARASSMENT AND BULLYING** on the interested parties in this action as follows:

Randy J. Harvey                          *Of Attorneys for Plaintiff Liani Reyna*
Patrick G. Conroy
EMPLOYMENT LAW PROFESSIONALS
P.O. Box 1309
20015 SW Pacific Hwy, Suite 221
Sherwood, Oregon 97140
Telephone: (503) 822-5340
Facsimile: (503) 433-1404
Email: randy@elpnw.com and
patrick@elpnw.com

☐  by **mail** in a sealed envelope, with postage fully prepaid, and deposited with the U.S. Postal Service in Portland, Oregon.

☐  by **hand delivery.**

☐  by **facsimile transmission.**

☐  by **email.** Based on an agreement of the parties to accept service by e-mail or electronic transmission.

☒  by **electronic service** via the Court's CM/ECF electronic filing system for registered users.

*/s/ Trung D. Tu*
Trung D. Tu, OSB No. 004100
Senior Deputy City Attorney
Telephone: (503) 823-4047
Of Attorneys for Defendant City of Portland

**Page  11 –  DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE**